# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER SHAND,<br>        *Plaintiff*,<br>    v.<br><br>WARDEN NICK RODRIGUEZ, DEPUTY<br>WARDEN DERRICK MOLDEN,<br>LIEUTENANT ALFONSO LINDSEY, in their<br>individual capacities,<br>        *Defendants*. | CASE NO. 3:20-cv-1268 (SVN) |

## <u>INTIAL REVIEW ORDER</u>

Plaintiff Christopher Shand, a sentenced inmate[1] currently incarcerated within the Connecticut Department of Correction ("DOC"), brings this Complaint *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging violations of the Eighth and Fourteenth Amendments and a state law claim of intentional infliction of emotional distress against Northern Correctional Institution ("Northern") Warden Nick Rodriguez, Northern Deputy Warden Derrick Molden, and Northern Lieutenant Alphonso Lindsey in their individual capacities.  Compl., ECF No. 1 ¶¶ 3-5. Plaintiff's Complaint also raises First Amendment concerns.

Pursuant to 28 U.S.C. §1915A, the Court now reviews Plaintiff's Complaint to determine whether his Section 1983 claims may proceed.  As discussed below, the case shall proceed on Plaintiff's Eighth Amendment excessive force and conditions of confinement claims against Lieutenant Lindsey in his individual capacity for damages; and on his state law claim for

---

[1] On January 7, 2015, Plaintiff received an eight-year sentence.  *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record").

intentional infliction of emotional distress against Lieutenant Lindsey for damages.  All other claims are DISMISSED without prejudice under 28 U.S.C. § 1915A.

## I.      STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  *See* 28 U.S.C. § 1915A(b)(1)-(2); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 2926294, at *3 (D. Conn. June 8, 2018).

Although highly detailed allegations are not required, a complaint must state a claim that is "plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).  A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, the Court is not bound to accept "conclusory allegations."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S at 557).

If a plaintiff is proceeding *pro se*, it is well-established that his complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]."  *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x. 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (noting that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers").  A *pro se* complaint is adequately pled if its allegations, accepted

as true and liberally construed, could "conceivably give rise to a viable claim."  *See Green v.*

*Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130

(2d Cir. 2005)).  Nevertheless, even when reviewing a *pro se* complaint, a court may not "invent

factual allegations" that the plaintiff has not pleaded.  *See Chavis v. Chappius*, 618 F.3d 162, 170

(2d Cir. 2010).  A *pro se* complaint that contains "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements," is not sufficient to state a viable claim.  *See id.*

## II.     FACTUAL ALLEGATIONS

The Complaint sets forth the following alleged facts, which are accepted as true for

purposes of this initial review.[2]

On January 6, 2019,[3] Plaintiff was in his cell in the 2-West housing unit of Northern when

his toilet became clogged and overflowed, causing water and fecal matter to leak out onto the floor.

Compl. ¶ 9.  Plaintiff informed a unit correction officer about the condition of the toilet; Plaintiff

alleges that it was known that the 2-West housing unit—and Northern generally—had constant

plumbing issues.  *Id.* ¶ 10.

Lieutenant Lindsey appeared at Plaintiff's cell, at which time Plaintiff explained what had

occurred.  *Id.* ¶ 11.  Lieutenant Lindsey ignored Plaintiff's complaint about the toilet and directed

Plaintiff to unclog the toilet with his own hand.  *Id.* ¶ 12.  Lieutenant Lindsey then threatened

---

[2] *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for purposes of Section 1915A review, "[t]he Court must accept as true all factual matters alleged in a complaint").

[3] It is difficult to discern the date of the incident underlying Plaintiff's claims due to the illegibility of his handwriting.  While the Court presently reads the date in Plaintiff's Complaint as "January 6, 2019," it is possible that the incident occurred on January 1 or January 8, 2019.  *See* Compl. ¶ 9.  Because the date of the incident is not material to Plaintiff's claims, the Court will not attempt to resolve the issue at this time.

Plaintiff with the application of in-cell restraints if Plaintiff did not comply with his order.  *Id.* ¶ 13.[4]  Plaintiff refused to comply and informed Lieutenant Lindsey that he had not done anything wrong.  *Id.* ¶ 14.  Lieutenant Lindsey again ordered Plaintiff to unclog the toilet himself.  *Id.* ¶ 15. Plaintiff once more refused.  *Id.* ¶ 16.

Following Plaintiff's second refusal, Lieutenant Lindsey ordered Plaintiff placed in in-cell restraints.  *Id.*  Plaintiff alleges that this order was made to retaliate, harass, and punish Plaintiff for his refusal to stick his hand inside a feces-contaminated toilet bowl.  *Id.*  Plaintiff further alleges that Lieutenant Lindsey knew that Plaintiff had not clogged the toilet and knew that there was a plumbing issue in the 2-West housing unit and throughout all of Northern, which was why Lieutenant Lindsey did not later issue Plaintiff a disciplinary report.  *Id.* ¶ 26.

While Lieutenant Lindsey placed Plaintiff in the in-cell restraints, Plaintiff told him that he would bang his head if so restrained.  *Id.* ¶ 17.  Lieutenant Lindsey immediately ordered that Plaintiff be escorted to the medical unit to be placed in four-point restraints.  *Id.* ¶ 18.[5]  Plaintiff subsequently was held in four-point restraints for eight hours.  *Id.* ¶ 19.  After the four-point restraints were removed, Plaintiff informed Lieutenant Lindsey that he would not be safe and would bang his head if he were brought back to the housing unit.  *Id.* ¶ 20.  Lieutenant Lindsey again ordered Plaintiff to be placed in four-point restraints.  *Id.* ¶ 21.  Plaintiff remained in four-point restraints for a total of ten hours.  *Id.* at ¶ 22.

Plaintiff alleges that Warden Rodriguez and Deputy Warden Molden signed-off on the in-cell and four-point restraint placement pursuant to DOC Administrative Directive 6.5.  *Id.* ¶¶ 3-4,

---

[4] In-cell restraints entail that a prisoner is placed in a bare cell and is restrained with a combination of handcuffs, leg shackles, a "belly chain," and a chain connecting the legs and arms.  Compl. ¶ 23.

[5] Four-point restraints entail that a prisoner is placed on his back on a metal bed, with each wrist and foot chained.  Compl. ¶ 23.

38.  Plaintiff additionally alleges that Warden Rodriguez, Deputy Warden Molden, and Lieutenant Lindsey routinely subjected prisoners to in-cell restraints, and that Warden Rodriguez and Deputy Warden Molden had a policy of permitting or authorizing excessive uses of force against prisoners, including Plaintiff.  *Id.* ¶¶ 23-25, 32, 34.[6]  Plaintiff maintains that Defendants are aware that chaining someone for ten hours causes pain and mental suffering to that person.  *Id.* ¶ 28.  Plaintiff states that, as a result of the in-cell and four-point restraints, he has suffered from delusions and hallucinations, loss of sleep and memory, fear, humiliation, emotional stress, and anxiety attacks; has had suicidal ideation; has engaged in self-harm; has contracted a skin infection and developed rashes; has suffered contusions to his head, limbs, and torso; and has experienced pain in his back, torso, legs, feet, and shoulder.  *Id.* ¶¶ 33, 42.

## III.    DISCUSSION

Plaintiff alleges that all Defendants have violated the Eighth Amendment's protection against cruel and unusual punishment by placing him in in-cell restraints and four-point restraints solely to cause him physical and psychological pain.  Compl. ¶¶ 1, 31-32.  Plaintiff alleges Warden Rodriguez and Deputy Warden Molden are liable due to their approval of the restraints applied by Lieutenant Lindsey.  *Id.* ¶¶ 3-4, 38.  Based on its review of Plaintiff's Complaint, the Court has determined that Plaintiff's Eighth Amendment claims sound in excessive use of force and in deliberate indifference to his health and safety with respect to the conditions of his confinement.[7]

---

[6] Plaintiff further states that he "had many issue[s] with the defendants and th[eir] action against him where they were subject of numerous complaints, grievances, and ongoing litigation."  Compl. ¶ 27.

[7] Plaintiff's Complaint asserts deliberate indifference and failure to train claims against Warden Rodriguez and Deputy Warden Molden based on a policy and practice of using in-cell and four-point restraints.  Compl. ¶¶ 31-42.  Plaintiff's deliberate indifference and failure to train claims consist of formulaic and conclusory allegations related to Warden Rodriguez's and Deputy Warden Molden's supervisory positions.  *See id.* ¶¶ 34-37, 40-42.  Such conclusory pleading is insufficient to state a plausible constitutional violation against Warden Rodriguez and Deputy Warden Molden.  *See Darby v. Greenman*, 14 F.4th 124, 131 (2d Cir. 2021) (noting vague and conclusory allegations are not sufficient to state defendant officials' participation in civil rights violation).

The Court further construes Plaintiff's Complaint as suggesting a claim of First Amendment retaliation.

### A.      Eighth Amendment Excessive Force

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim.  *Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (internal quotation marks omitted) (quoting *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992)).  However, it is the force used, not the injury sustained, that "ultimately counts." *Id.* at 38.  A malicious use of force to cause harm constitutes a *per se* Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson*, 503 U.S. at 9).  The extent of the inmate's injuries as a result of the defendant's conduct is not the dispositive factor in determining the objective component. *See Wilkins*, 559 U.S. at 37 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

"When reviewing the use of restraints under the Eighth Amendment, the court must consider the individual circumstances surrounding the use of restraints, including the length of time restraints were imposed and the objective sought to be served." *Alston v. Butkiewicus*, No. 3:09–cv–207(CSH), 2012 WL 6093887, at *11 (D. Conn. Dec. 7, 2012). Because "[m]aintaining order and security in a prison is a legitimate penological objective[,] . . . the use of restraints that are reasonably related to maintaining prison order and security, without more, does not violate the Eighth Amendment." *Shehan v. Erfe*, No. 3:15-cv-1315 (MPS), 2017 WL 53691, at *9 (D. Conn. Jan. 4, 2017); *see also Caballero v. Lantz*, No. 3:05-cv-140 (CFD), 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008) ("The use of in-cell restraints in prisons is not prohibited by the Eighth Amendment and is certainly justified under many circumstances.").

Plaintiff has alleged that he was first placed in restraints due to his refusal to unclog a toilet with his bare hand, and later due to his expressed concern for his safety if he returned to his housing unit. Compl. ¶¶ 16, 20-21. Plaintiff has also alleged that he was placed in restraints even though Lieutenant Lindsey had not issued him any disciplinary report. *Id.* ¶ 26. Taking Plaintiff's allegations to be true, the Court concludes that Plaintiff's allegations raise an inference that Lieutenant Lindsey's conduct violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Thus, the Court must consider whether Plaintiff has also satisfied the subjective component of the Eighth Amendment analysis. Construed most broadly, Plaintiff's allegations suggest that

Lieutenant Lindsey's orders to place Plaintiff in in-cell or four-point restraints exceeded the amount of force necessary to restore order and lacked a legitimate penological reason. *See Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim of excessive force based on placement in in-cell restraints without a legitimate safety or security basis for plaintiff's placement).   For initial pleading purposes, Plaintiff's allegations are sufficient to state a plausible excessive force claim against Lieutenant Lindsey.

Plaintiff has also alleged Eighth Amendment excessive force claims against Warden Rodriguez and Deputy Warden Molden, alleging that they signed off on the in-cell restraints and four-point restraints placement.  Compl. ¶ 38.  Plaintiff has alleged that they authorized the alleged abusive use of restraints and failed to remedy the constitutional violation, condoned a policy or custom of excessive force through the use of in-cell and four-point restraints, and failed to ensure that the prison staff used in-cell or four-point restraints in compliance with Eighth Amendment excessive force standards.  *Id.* ¶¶ 23-25, 32, 39-41.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995).  A plaintiff cannot sue a defendant for damages solely because of his or her supervisory position.  *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983), *overruled on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989).  The Second Circuit has recently clarified the standard to apply for a claim of supervisory liability.  *See Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020).  The court adopted

the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).  Thus, Plaintiff must allege facts showing that each supervisory defendant "personally knew of and disregarded an excessive risk" to his health and safety.  *Id.* at 619.

Plaintiff's allegations against Warden Rodriguez and Deputy Warden Molden are threadbare and conclusory.  Compl. ¶¶ 32-41.  While the Court construes the alleged facts liberally and interprets them to make the strongest argument that they suggest, Plaintiff's pleading does not meet the *Tangreti* standard and is insufficient to suggest that Warden Rodriguez and Deputy Warden Molden were aware that they were authorizing the use of in-cell restraints and four-point restraints allegedly absent penological justification.  *See Murphy v. Spaulding*, No. 1:20-CV-9013, 2020 WL 7248855, at *3 (S.D.N.Y. Dec. 7, 2020) (claiming that assistant warden created an "atmosphere" permitting a violation to occur was insufficient to allege personal involvement); *Ford v. Aramark*, No. 18-cv-2696, 2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official where "the Complaint lack[ed] any *non-conclusory* allegation" about that official's personal involvement").  Accordingly, Plaintiff's excessive force claim may only proceed against Lieutenant Lindsey.

### B.    Eighth Amendment Conditions of Confinement

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  Accordingly, prison employees and officials cannot "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering

the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  Instead, the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'"  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (alteration in original) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)).  "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," with their severity being "evaluated in light of contemporary standards of decency." *Id.* (citations and quotations omitted).  As for the subjective prong of the inquiry, "[d]eliberate indifference . . . means the official must 'know of and disregard an excessive risk to inmate health or safety; the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (emphasis added and internal brackets omitted) (quoting *Farmer*, 511 U.S. at 837).

The Second Circuit has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker*, 717 F.3d at 127.  The Court has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and instead has instructed that whether a claim states a constitutional

10

deprivation "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste).

Here, Plaintiff's allegations that his cell floor was covered with fecal matter is sufficient for initial pleading purposes to state the objective element of the analysis. Because Plaintiff's allegations indicate that Lieutenant Lindsay acted with conscious disregard to Plaintiff's objectively serious unsanitary condition of confinement, the Court will permit Plaintiff's Eighth Amendment claim based on unsanitary conditions to proceed beyond initial review.

Plaintiff also alleges that his placement in restraints subjected him to pain and mental suffering. Compl. ¶¶ 33, 42. Because a painful or harmful period of restraint can rise to the level of an objectively serious condition of confinement, the Court will permit Plaintiff's Eighth Amendment claim based on Lieutenant Lindsey's deliberate indifference to the risk to Plaintiff's health and well-being posed by his placement in restraints to proceed for further development of the record. *Smith v. Barone*, No. 3:20cv794 (VLB), 2021 WL 917118, at *7 (D. Conn. Mar. 10, 2021) (permitting Eighth Amendment claim based on use of four-point restraints to proceed beyond initial review); *Davis*, 2019 WL 7879729, at *11 (permitting Eighth Amendment condition claim based on brief use of restraints without legitimate reason to proceed beyond initial review).

Plaintiff's allegations do not suggest, however, that either Warden Rodriguez or Deputy Warden Molden had any direct involvement in subjecting Plaintiff to an unsanitary condition or cruel and unusual use of restraints. Accordingly, the Court will permit the Eighth Amendment conditions of confinement claims to proceed only against Lieutenant Lindsay.

### C.    First Amendment Retaliation

Plaintiff alleges that he has "had many issue[s] with the defendants and th[eir] action against him" where they were the subject of his "numerous complaints, grievances, and ongoing litigation."  Compl. ¶ 27.  Thus, the Court liberally construes the Complaint to assert a claim of First Amendment retaliation.

The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'"  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).  Thus, retaliation claims must be supported by "specific and detailed factual allegations" and not "stated in wholly conclusory terms."  *Id.* (internal quotation marks and citations omitted).  To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Dolan*, 794 F.3d at 294.

"Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance."  *Baltas v. Maiga*, No. 3:20cv1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020); *see Dolan*, 794 F.3d at 294 ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and citations omitted).  Thus, Plaintiff has satisfied the first prong of his retaliation

claim because he has alleged that he had filed numerous grievances and lawsuits against Defendants.

An adverse action, as required for the second prong, refers to "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353 (citation and internal quotation marks omitted). Thus, Plaintiff has also sufficiently alleged the second prong because suffering a placement in restraints due to a refusal to unclog a toilet barehanded would deter a similarly situated inmate of ordinary firmness from exercising his or her constitutional rights.

Plaintiff has not, however, alleged facts to raise an inference of causation. In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against him." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-cv-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019). Plaintiff has not alleged that Lieutenant Lindsey or any other defendant was aware of a complaint or grievance filed against him or had any specific reason to take retaliatory action against him. Thus, Plaintiff's retaliation claim is not plausible because he has not alleged "specific and detailed factual allegations" to support a causal connection between Lieutenant Lindsey's conduct and Plaintiff's protected activity. *See Dolan*, 794 F.3d at 295. Accordingly, Plaintiff has not plausibly alleged a First Amendment retaliation claim.

**D.      Intentional Infliction of Emotional Distress**

To state a claim of intentional infliction of emotional distress under Connecticut law, a plaintiff must allege that (1) the defendant intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of the defendant's conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the resulting emotional distress sustained by the plaintiff was severe.  *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000).  The Connecticut Supreme Court has defined extreme and outrageous conduct as that which "exceeds all bounds usually tolerated by decent society."  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (internal citation omitted).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*  The conduct must be such that "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *Id.*

Because Plaintiff has alleged that he was placed in restraints under circumstances that violated contemporary standards of decency, the Court also construes Plaintiff's allegations most broadly to assert plausible claims of intentional infliction of emotional distress against Lieutenant Lindsey.

**IV.      CONCLUSION**

For the foregoing reasons, the Court enters the following orders:

(1) The case shall proceed on Plaintiff's Eighth Amendment excessive force and conditions of confinement claims against Lieutenant Lindsey in his individual capacity for damages; and on his state law claim for intentional infliction of emotional distress against Lieutenant Lindsey for

14

damages.   All other claims are DISMISSED without prejudice under 28 U.S.C. § 1915A. Defendants Warden Rodriguez and Deputy Warden Molden are DISMISSED from this action.

(2) The Clerk shall verify the current work addresses for Lieutenant Alphonso Lindsey with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to him at his confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Lieutenant Lindsey fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Lieutenant Lindsey, and Lieutenant Lindsey shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5)  Lieutenant Lindsey shall file his response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.  If Lieutenant Lindsey chooses to file an answer, Lieutenant Lindsey shall admit or deny the allegations and respond to the cognizable claims recited above. Lieutenant Lindsey may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order, specifically **June 15, 2022**.  Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Standing Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order, specifically **July 15, 2022**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Lieutenant Lindsey or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on the defendant's counsel by regular mail.

IT IS SO ORDERED.

_____/s/_____
Sarala V. Nagala, U.S.D.J.

Dated:        December 17, 2021
              Hartford, Connecticut